UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHEN DIVISION
ASHLAND

| | | |
|---|---|---|
| DEANNA ELAINE HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-78-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Deanna Elaine Hunt, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Hunt's application for a period of disability and disability insurance benefits (DIB). The Court, having reviewed the record and for the reasons set forth herein, will DENY Hunt's Motion for Summary Judgment [R. 6] and GRANT the Commissioner's. [R. 7.]

**I**

Hunt filed an application for DIB on March 17, 2011. [Transcript (Tr.) 144-47.] She alleges a disability beginning on August 30, 2008, due to pain in her hips, back, knees, and arms; degenerative disc disease; hypertension, hyperlipidemia, and obesity; depression and anxiety; and stomach problems such as gastroesophageal reflux and a hiatal hernia. [Tr. 15-17.] Her date last insured is December 31, 2013. [Tr. 15.] Hunt's application was denied initially on June 1, 2011, and upon reconsideration on August 31, 2011. [Tr. 25.] Subsequently, at Hunt's request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Toby J. Buel, Sr. on November 5, 2012. [Tr. 28-57.] During the hearing, the ALJ heard testimony from Hunt

and from vocational expert (VE) Gina Baldwin. [*Id*.] Hunt, who was forty-eight years old at the time of the hearing decision, has a high school education. [Tr. 37, 40.]. She has past relevant work as a teacher's aide, which VE Baldwin described as light and semi-skilled, but medium as Hunt performed it. [Tr. 36.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. §§ 404.1520(e), 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

C.F.R. § 404.1520(f). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(g).

In this case, at Step 1, the ALJ found that Hunt has not engaged in substantial gainful activity since August 30, 2008, the alleged onset date. [Tr. 15.] At Step 2, the ALJ found that Hunt has the following "severe" impairments: degenerative disc disease, hypertension, and obesity. [*Id.*] At Step 3, the ALJ found that Hunt's impairments alone or in combination did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 18.] The ALJ then considered the entire record and determined that Hunt possessed the residual functional capacity to perform "the full range of medium work as defined in 20 C.F.R. 404.1567(c)." [Tr. 19.] Based on the RFC, and the testimony of the vocational expert, the ALJ found at Step 4 that Hunt is capable of performing her past relevant work as it is generally performed in the national economy. [Tr. 23.] Accordingly, on January 14, 2013, the ALJ found that Hunt was not "disabled" and therefore is ineligible for DIB. [Tr. 23]. The Appeals Council declined to review the ALJ's decision [Tr. 1], and Hunt now seeks judicial review in this Court.

**II**

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

3

591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip, 25 F.3d at 286* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

**A**

Hunt's primary argument on appeal appears to be that the ALJ's final decision was not supported by substantial evidence. [R. 6 at 6-8.] Although this argument includes several additional arguments, it is integrally related to the ALJ's RFC determination. Thus, the Court will address Hunt's arguments by first examining the key issue of whether substantial evidence supports the ALJ's finding concerning her RFC. *See* 42 U.S.C. § 405(g). An individual's RFC is an administrative determination about the person's maximum ability to perform work-related activities and reflects the most that the person can do in a work-related setting despite his or her limitations. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. §404.1545(a)(1). This assessment "is based upon consideration of all relevant evidence in the case record," including medical

4

evidence as well as the individual's own statements of what he or she can do. SSR 96-5p, 1996 WL 374183, at *5; 20 C.F.R. § 404.1545(a)(3). As noted above, this Court must give deference to the Commissioner's decision "[e]ven if this Court might have reached a contrary conclusion of fact . . . so long as [the decision] is supported by substantial evidence." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010); *Ulman*, 693 F.3d at 714.

      Here, despite Hunt's claim that ALJ Buel made "an arbitrary and capricious decision to improperly discount the severity of [her] impairments" and to "substitute his impression of [Hunt's] disability over medical judgments in the record," [R. 6 at 6] this accusation is simply incorrect. ALJ Buel acknowledged that Hunt suffered from three severe impairments, and in doing so he properly applied the administrative definitions of "severity."[2] [Tr. 15-18.] He also properly applied the administrative framework in determining that, after examining the voluminous medical records submitted by Hunt, no treating or examining physician mentioned any findings that would equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. at 18.] On appeal, Hunt's counsel points to no error in this part of the ALJ's analysis or conclusion, nor does he point to any medical record that would contradict this finding. For Hunt to prevail in her claim, she needs to demonstrate that she suffers from an impairment that is at a "level of severity sufficient to preclude substantial gainful activity" for a duration of a continuous period of at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (citing other sources) (internal citations and quotation marks omitted); 42 U.S.C. § 423(d)(3). Yet Hunt's counsel points to nothing in the record to support this claim. Instead he only offers general criticisms of the ALJ's conclusions.

---

[2] Hunt does not challenge the ALJ's findings at step two concerning her severe impairments, not does she offer any evidence that the ALJ improperly applied the regulatory framework or failed to find severe impairments in addition to those of degenerative disc disease, hypertension, and obesity. Thus, the Court will focus its analysis on the ALJ's determination that despite those three severe impairments Hunt is still capable of medium work.

In contrast, ALJ Buel gave an extensive explanation of the medical records that support his ultimate conclusion that Hunt was capable of performing medium work. Medium work is defined in 20 C.F.R. § 404.1567(c) as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). In making the RFC determination, the ALJ considered the extent to which Hunt's alleged symptoms were consistent with the objective medical evidence and the opinion evidence in the record, including the reports of both treating physicians and consultative examiners, and concluded that many of the medical records submitted simply do not support her allegations of disabling symptoms. [Tr. 19-22.] For example, ALJ Buel noted that despite Hunt's informing her treating physician Dr. Thad Manning in April 2009 that she had recently quit work due to her health problems, she also admitted she was off all her medications and complained primarily of pain in her left ear. [R. 21, 203-04.] She saw Dr. Manning again in August 2010 with complaints of joint pain, but three months later reported she was not taking any medications for her osteoarthritis. [Tr. 21, 200-01.] In March 2010, Hunt was treated at East Kentucky After Hours Clinic for ear pain, but had no other complaints. [Tr. 21, 455.] An examination at Pikeville Medical Center in December 2010 concluded that Hunt's respiratory and cardiovascular functioning were normal, she had intact deep tendon reflexes and good sensation, and she had normal muscle strength throughout. [Tr. 21, 267, 272, 281, 291.] At a consultative examination with Dr. Rhoads in May 2011, although Hunt reported she had had lower back pain since 2002, the examination results revealed an absence of lower extremity swelling, edema, or atrophy; intact bilateral grip strength; full range of motion of her knees; normal gait and station; no paravertebral muscle spasms; negative straight leg raise testing and ability to stand on one leg at a time without difficulty; intact cranial nerves and intact sensation; normal deep tendon reflexes; and normal muscle strength of 5/5 in

all her extremities. [Tr. 21, 390-93.] From May 2011 until November 2011, Hunt only sought medical treatment for an earache, bronchitis, sinus issues, and a cough. [Tr. 456-60.] In May 2012, Hunt had a hysterectomy, but the associated physical and mental examinations were normal, and at a post-operative follow-up visit in June 2012 Hunt reported she was "feeling great" with no complaints. [Tr. 22, 461-91, 450.]

Despite Hunt's degenerative disc disease, throughout the relevant time period the various medical reports Hunt submitted reveal normal or strong musculoskeletal functioning, normal ranges of motion and normal muscle strength in her extremities, good muscle strength throughout, normal and independent ambulation, and normal neurological functioning. [Tr. 200-05, 267, 270-72, 281, 290-92.] The consultative examination on May 4, 2011 revealed that Hunt appeared "stable at station and comfortable in the supine and sitting positions," and that her intellectual functioning, ambulation, grip strength was intact, and fine and coarse motor functions were all normal. [Tr. 390-91.] The examination also concluded that there was no tenderness, warmth, swelling or fluid in the lower extremities, no tenderness or evidence of paravertebral muscle spasm in the cervical spine or dorsolumbar spine, normal straight leg raises when tested in the sitting and supine position, normal ability to stand and to bend forward at the waist, normal muscle strength in the upper and lower extremities with no evidence of atrophy and normal sensation, and a normal ability to perform a tandem gait and squat without difficulty. [Tr. 391-92.] Moreover, Hunt reported several times that she took only Motrin for her pain, and that it proved to be somewhat effective. [Tr. 46, 52, 164.] Such non-aggressive treatment and mild medication further support the ALJ's determination that Hunt's pain was not as disabling as she alleges. *See, e.g., See Kimbrough v. Sec'y of Health and Human Servs*., 801 F.2d 794, 797 (6th Cir. 1986) ("Objective tests and mild medication taken by claimant do not bear out the

7

severity of claimant's pain."); *Henderson v. Astrue*, 2011 WL 3608164, *5 (E.D. Ky. Aug. 16, 2011) (noting that non-aggressive treatment of claimant's symptoms such as taking only over-the-counter medication undercuts her claim of a severe impairment).

As for Hunt's hypertension, which the ALJ also found to be severe, Hunt did not demonstrate any disabling symptoms resulting from it. Despite her medical reports reflecting that her blood pressure was high sometimes, the same reports and examinations also consistently reflected normal cardiovascular and respiratory functioning and no edema in her extremities. [Tr. 200-05, 267, 272, 281, 291, 390-93, 456, 459.] The medical reports submitted by Hunt also do not reflect that she ever complained of cardiovascular issues or other problems resulting from her blood pressure. [Tr. 200-05, 267, 271-72, 291.] On appeal Hunt points to no specific limitations resulting from her hypertension, and she does not challenge any specific portion of the ALJ's analysis concerning her hypertension or how that analysis affected the RFC determination. Likewise, Hunt presents no arguments concerning her obesity that would indicate the ALJ erred in finding that it did not cause disabling limitations, nor is there any evidence in the record to support a conclusion that Hunt's obesity would prevent her from performing medium work.

As noted above, objective medical tests and reports supporting the ALJ's decision can satisfy the substantial evidence standard. *See, e.g., Lawrence v. Comm'r of Soc. Sec'y*, 591 Fed. App'x 470, 471 (6th Cir. 2015) (noting objective medical evidence along with medical opinions and claimant's daily activities all constituted substantial evidence supporting the RFC determination); *Pasco v. Comm'r of Soc. Sec'y*, 137 Fed. Appx. 828, 836 (6th Cir. 2005) (finding substantial evidence standard met when there was a lack of objective medical evidence in record confirming that claimant's headaches were so severe as to be disabling); *Bailey v. Comm'r of Soc. Sec'y*, 623 F. Supp. 2d 889, 910 (W.D. Mich. 2009) (finding objective medical evidence in

8

the record supporting ALJ's decision and contradicting Plaintiff's subjective claims constituted substantial evidence supporting ALJ's determination). Here, the ALJ summarized multiple objective medical records supporting his RFC determination, in addition to noting the non-aggressive treatment for Hunt's conditions. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (noting that claimant's use of mild over-the-counter medication "undercuts complaints of disabling pain"); *Henderson v. Astrue*, 2011 WL 3608164, at *5 (E.D. Ky. Aug. 16, 2011) (noting that "non-aggressive treatment of claimant's symptoms undercuts Plaintiff's claim of a severe impairment") (citing other sources). When there is little to no objective medical evidence confirming that a claimant's condition causes disabling pain or other disabling symptoms, apart from "detailed corroborating medical evidence, [the court] will generally defer to the ALJ's assessment. *Blacha*, 927 F.2d at 230-31 (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)).

**B**

Connected to the substantial evidence argument is Hunt's contention that ALJ Buel failed to give the proper weight to her treating physician, Dr. Thad Manning. [R. 6-2 at 7.] Hunt implies from the argument in her brief that Dr. Manning's opinion supports the conclusion that her physical and mental impairments have rendered her disabled, but Hunt fails to cite to any opinion or other document connected to Dr. Manning that would support such an implication. Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion on the issues of the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Bogle v. Sullivan*, 998 F.2d

9

342, 347-48 (6th Cir. 1993) ("This court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). An ALJ is required to give "good reasons" for not giving controlling weight to opinions from the treating physician, 20 C.F.R. § 404.1527(c)(2), and should consider the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 544); 20 C.F.R. § 404.1527(c).

Here, the main problem is that Dr. Manning did not provide any opinion on the severity of Hunt's impairments or any resulting limitations from them, and thus there is no such opinion to which controlling weight could be given. The record only contains Dr. Manning's office notes from Hunt's visits, and the great majority of which appear to be related to earaches, nausea, GERD issues, and fatigue.[3] [Tr. 200-62.] Moreover, his notes consistently reflect that Hunt had normal respiratory, cardiovascular, musculoskeletal, neurological, and psychiatric functioning, and the course of treatment for all of her complaints appears conservative. [*Id*.] While a few of the records indicate Hunt complained of depression or anxiety, they do not reflect Dr. Manning's opinion as to their cause or severity or indeed any opinion that ALJ Buel could have given weight to. [Tr. 205, 208, 210.] Perhaps most importantly, none of these records reflect any functional limitations caused by Hunt's present complaints. Jotting down a brief diagnosis does not constitute an opinion as to Hunt's functional limitations, and thus it was reasonable for the ALJ to consider Dr. Manning's notes in the proper context of how they either

---

[3] Hunt makes no argument that any of these issues constitute severe impairments.

contradicted or confirmed opinions from other medical sources and to give less weight to some of their conclusions.

Hunt also challenges the fact that ALJ Buel afforded more weight to consultative examiner Dr. Susan Rhoads' opinion than to the opinion of Dr. Anthony deGuzman, also a consultative examiner. [R. 6-2 at 8.] While more weight is generally given to the opinions of treating physicians than to those of non-examining medical sources, *see* 20 C.F.R. §404.1527(c)(1), "the opinions of non-examining state agency medical consultants have some value, and under certain circumstances can be given significant weight." *Branch v. Astrue*, 2010 WL 5116948, at *5 (N.D. Ohio Dec. 9, 2010). Non-examining sources are regarded "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 WL 374180, *2. Thus, the opinions of one-time examining professionals, state agency doctors, and non-examining consultative professionals should be considered, and may be given some or even significant weight depending on the analysis of the same factors as those considered for treating physicians, such as supportability, consistency and specialization. 20 C.F.R. § 404.1527(e), (f); *see also* SSR 96-6p at *2-*3; *Branch*, 2010 WL 5116948, at *5. Indeed, the regulations instruct the ALJ to consider the opinions of state agency consultants and to explain the reasons for the weight given to them. 20 C.F.R. § 404.1527(e)(2)(i)-(ii), (f)(2); SSR 96-8p, 1996 WL 374184, *7 ("[t]he RFC assessment must always consider and address medical source opinions").

Here, the ALJ concurred with the State agency medical consultant who afforded great weight to the opinion of Dr. Rhoads, but afforded "little weight" to the opinion of Dr. deGuzman because it "strongly conflicts" with Dr. Rhoads' more thorough examination of Hunt. [Tr. 22.] Hunt does not say why Dr. deGuzman's opinion should be given more weight, but she does

11

argue that Dr. Rhoads' opinion deserved less weight because Dr. Rhoads did not review all of Hunt's medical records and because the report confused Hunt with a different patient who had a history of smoking. [R. 6-2 at 8.] First, as explained above, ALJ Buel did not err in considering the opinion of Dr. Rhoads, and it was not improper to give significant weight to the opinion of a consultative examiner, especially in light of the fact that no clear opinion from a treating source was provided.

Second, as for giving more weight to one consultative examiner than the other, ALJ Buel noted that Dr. Rhoads' examination was much more thorough than Dr. deGuzman's. Dr. deGuzman issued a report limited to evaluating Hunt's RFC by simply answering form questions in a primarily yes/no format without any detailed explanation. [Tr. 493-98.] In contrast, Dr. Rhoads provided an extremely detailed report that thoroughly explained her opinion concerning all aspects of Hunt's complaints. [Tr. 387-93.] After reviewing all the medical evidence, ALJ Buel determined that Dr. Rhoads' opinion matched the record evidence better than Dr. deGuzman's. Moreover, the ALJ acknowledged that Dr. Rhoads ended her report by listing several functional limitations caused by Hunt's impairments that should be considered, and in formulating Hunt's RFC the ALJ noted that each of those limitations was supported by the evidence in the record, and considered them in his conclusion that despite these limitations Hunt would still be able to perform work as a teacher's aide "as it was generally performed in the national economy." [Tr. 22-23.] Hunt does not dispute that she suffers from these limitations, nor does she point to any additional limitations she has, nor does she make an argument that the conclusion that she can perform medium work despite such limitations is incorrect.

Third, concerning Hunt's criticism about Dr. Rhoads' report, it is clear that Dr. Rhoads examined Hunt in person and did not look at medical records alone. [Tr. 387.] Moreover, it is

the *ALJ's* duty to review the relevant records and evidence at issue in formulating the RFC, and the ALJ must not base the RFC on any one particular opinion. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545(a)(3), 404.1546(c); S.S.R. 96-8p, 1996 WL 374188, at *1, *5. ALJ Buel stated he examined all the records, and he determined that Dr. Rhoads' opinion was consistent with the other evidence. He also did not base his RFC determination solely on Dr. Rhoads' opinion – he merely afforded her opinion greater weight than Dr. deGuzman's because it was more detailed and more consistent with other evidence in the record. As for confusing Hunt with another patient, it is clear that Dr. Rhoads actually examined Hunt and addressed Hunt's particular situation. Hunt's motion refers to a single sentence on the last page of the report that appears to be a typographical error referring to "his history of working in coal mines" and "his smoking history" support the possibility of lung disease. [Tr. 393.] However, throughout the rest of the report, Dr. Rhoads refers to Hunt as a female and even specifically states that Hunt "does not smoke" and "has never worked in the coal mines." [Tr. 388.] The one typographical error to which Hunt points is harmless at most, and clearly did not affect the report's conclusions or ALJ's Buel's RFC determination.

Finally, ALJ Buel discussed Dr. Rhoads' opinion within the context of his *credibility* assessment of Hunt's complaints, particularly when assessing how some evidence in the record contradicts some of Hunt's subjective complaints. He did not solely rely on Dr. Rhoads' opinion in making his ultimate determination. It was particularly reasonable for ALJ Buel to give Dr, Rhoads' opinion more weight in light of the fact that Hunt's treating physicians did not give contrary opinions, or indeed any particular opinion. *See, e.g., Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 294 (6th Cir. 2006); *see also Norris v. Comm'r of Soc. Sec.*, 461 F.App'x 433, 438-40 (6th Cir. 2012) (upholding weight given by ALJ to non-examining source when he

explained and justified his decision and explained that he found the state-agency physicians' assessment consistent with the longitudinal treatment record). Thus, because ALJ Buel properly considered opinion evidence of consultative physicians who examined Hunt and provided valid reasons for the weight assigned to them, and because Hunt points to no error other than a harmless typographical one, the Court finds that ALJ Buel did not improperly give more weight to Dr. Rhoads' opinion than to Dr. deGuzman's.

## C

Additionally, Hunt appears to challenge the ALJ's credibility assessment of her subjective complaints of pain as well. The basis of this challenge, however, is extremely undeveloped in a single statement that the ALJ should consider all of the plaintiff's symptoms "in the extent to which the signs and findings confirm these symptoms."[4] [R. 6-2 at 8.] No other explanation is provides as to how ALJ Buel allegedly did not consider all of Hunt's symptoms or otherwise improperly assessed her credibility. Under the regulations, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . ."). There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, at 852. In *Duncan*, the Sixth Circuit set out a two-part test for evaluating subjective complaints of pain:

---

[4] When claimants merely refer to issues "in a perfunctory manner, unaccompanied by some effort at developed argumentation," the issue is deemed waived. *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 466 (6th Cir. 2003). Nevertheless, given the apparent importance of Hunt's subjective complaints of pain to her ultimate argument that she is disabled, the Court will briefly address the matter of credibility determinations concerning pain.

14

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. If the claimant establishes one of those requirements, the SSA regulations direct the ALJ to consider various factors in evaluating the claimant's subjective statements about the intensity and persistence of pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(a), (c)(2)-(3), 416.929(c); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (listing factors to consider include the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain; treatment other than medication the claimant has received for pain; and any other measures the claimant uses to relieve the pain). "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir.2007); *see also Walters*, 127 F.3d at 531.

Here, ALJ Buel cited and applied the correct test [Tr. 19] and found that although Hunt's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements "concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible. [Tr. 21.] The ALJ set forth several direct examples to support that conclusion – examples which include most of the *Felisky* factors such as his consideration of Hunt's daily activities, her treatment and medication history, and how most of

15

her alleged pain and other symptoms were well-managed or improved with medication or other treatment. [Tr. 16-17, 21-22.] ALJ Buel specifically noted that Hunt primarily took only Motrin for pain despite rating her pain as a 10-plus. [Tr. 15, 19, 21, 46.] He also noted that based on Hunt's daily activities she only has a mild limitation in daily living. [Tr. 17-18.] Hunt's counsel does not point to any way in which the ALJ erred in applying the correct legal standard in assessing Hunt's credibility. Hunt's assertion on this point amounts to nothing more than expressing disagreement with the ALJ's conclusion, but she does not point to any improper application of the legal standard for assessing credibility. Given the record inconsistencies noted by the ALJ, he gave legally sufficient reasons for his credibility determination, and Hunt does not demonstrate anything to the contrary. Thus, to the extent that Hunt challenges the ALJ's credibility determination, her assertion fails to meet her burden of proof.

**D**

Hunt also includes an undeveloped assertion with no citation to legal authority that the Social Security Administration should have had her evaluated for her psychiatric condition. [R. 6-2 at 8.] To the extent that this assertion is an attempt to challenge ALJ Buel's finding that her anxiety and depression were not severe impairments within the meaning of the regulations, such an argument lacks merit. The decision to arrange for a consultative examination is entirely discretionary on the part of the Commissioner, particularly when "the evidence as a whole is insufficient to allow . . . a determination or decision" on a claim. 20 C.F.R. § 404.1519a(b). Here, the record contained evidence of Hunt's mental functioning, and there was no requirement for a consultative psychiatrist to examine her. Moreover, Hunt's apparent support for this assertion is only that she has been treated for depression and anxiety. [R. 6-2 at 8.] As stated previously, treatment or diagnosis of a condition is not evidence of disability, nor is it the

primary basis for determining the RFC – rather, the question is what functional limitations result from the condition. Here, none of the evidence in the record reflects serious limitations resulting from Hunt's anxiety or depression. Moreover, in determining that these conditions were not "severe," ALJ Buel properly analyzed them in terms of the functional areas known as the "paragraph B" criteria in section 12.00C of the Listing of Impairments, noting that Hunt could drive, shop, and manage money; reported no problems getting along with others; only had mild limitations concerning memory, concentration, understanding, or following instructions; and she had experienced no episodes of decompensation. [Tr. 17-18 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1).] Hunt points to no legal or factual error in this analysis, or to any other support for her assertion.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment [R. **6**] is **DENIED**;

2. Defendant's Motion for Summary Judgment [**R. 7**] is **GRANTED**; and

3. **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 4th day of May, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge